UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NELSON J. MATTA,

                Plaintiff,

   -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-5338 (FB)

*Appearances:*
*For the Plaintiff:*
ANN P. BIDDLE, ESQ.
Queens Legal Services
42-15 Crescent Street, 9th Floor
Long Island City, NY 11101

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
CHRISTOPHER JOHN BRACKETT, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

        Plaintiff Nelson J. Matta ("Matta") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings. For the reasons set forth below, the Commissioner's motion is granted and Matta's complaint is dismissed.

I

Matta, who is mentally ill, filed an application for supplemental security income on January 5, 2007. After his initial application was denied, he requested a hearing before an Administrative Law Judge ("ALJ").

Applying the familiar five-step process, the ALJ first found that Matta had not engaged in substantial gainful activity since January 5, 2007. Second, the ALJ evaluated Matta's claimed medical impairments, and found that his bipolar disorder was a "severe impairment" that "affect[ed] the claimant's ability to function mentally." A.R. at 14. Third, the ALJ considered whether Matta's impairment met the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, and found that it did not. The ALJ stated that the criteria for Affective Disorder (listing 12.04) were not satisfied because Matta's mental impairment did not result in "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration."[1] A.R. at 14. Fourth, the ALJ determined that Matta had the residual functional capacity ("RFC") to perform work at all exertional levels with nonexertional limitations: "simple, routine, low stress and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public." A.R. at 15. The ALJ found that in light of those limitations Matta could not perform any of his past relevant

---

[1] An "episode of decompensation" under the Act means a temporary increase in symptoms requiring additional treatment or support, such as an alteration in medication or hospitalization. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

2

work. Finally, at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (to satisfy his burden at this step the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"). The ALJ found that there are jobs that exist in significant numbers in the national economy that Matta can perform, for example landscape laborer, hand packer, electric screwdriver operator and electric sealing machine operator.

Based on the foregoing findings the ALJ concluded that Matta was not disabled within the meaning of the Act. On September 22, 2010, the Appeals Council denied Matta's request for review, thereby rendering the Commissioner's decision to deny benefits final. Matta timely sought judicial review.

II

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Matta challenges the Commissioner's decision on three grounds: (1) that the ALJ failed to give controlling weight to the opinion of his treating physician; (2) that the medical record supports a finding that Matta meets the criteria for Affective Disorders; and

3

(3) that the medical record supports a finding that Matta was unable to perform the mental demands of work. The Court addresses those arguments in turn.

**A. Treating Physician Rule**

According to the treating physician rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404. 1527 (d)(2)). "When the opinions of treating physicians are rejected, the Commissioner must 'always give good reasons. . . for the weight' given to those opinions." *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998) (quoting 20 C.F.R. § 416.927(d)(2)).

Matta contends that the ALJ "did not correctly weigh the opinion of Nelson's treating psychiatrist, Julio Riascos." Riascos opined that Matta remained at risk for a manic or psychotic episode, had marked impairments in social functioning and daily living activities and would find it difficult to keep a job because of his symptoms. Riascos was only one of multiple treating sources. Matta testified that he "had several doctors since [he] was first admitted to Elmhurst Hospital," and listed three doctors who treated him prior to Riascos. A.R. at 37. The ALJ gave Riascos's report "little weight because it was not supported by mental status examination findings, progress notes, and 'other evidence of record when viewed as a whole.'" Pl's Mem. of Law at 14.

The ALJ's reasons for rejecting Riascos's assessment were sound. Riascos's report was inconsistent with the reports obtained from Elmhurst Hospital, where Matta

4

received regular treatment from many different treating physicians. Those records showed that Matta's psychotic disorder responded to medication and group therapy and that Matta was calm, without significant limitations in concentration, motivation and social skills. Acknowledging that Riascos's assessment covers only one period of Matta's extended illness, and that other psychiatric specialists worked closely with Matta during his frequent visits to Elmhurst Hospital, the ALJ reasonably determined that Riascos's findings were not entitled to any special weight. The ALJ therefore did not violate the treating physician rule.

**B. Criteria for Affective Disorders**

An ALJ's determination that a claimant's condition is not medically equivalent to a listed impairment must be a "reasonable interpretation of the medical evidence in the record." *Brown v. Apfel*, 174 F.3d 59, 65 (2d Cir. 1999). Matta contends that based upon Riascos's assessment, it is evident that he meets the listed requirements for Affective Disorders and that the ALJ's determination to the contrary is not supported by substantial evidence. As discussed above, the Court has already determined that the ALJ did not err when he did not give controlling weight to Riascos's opinion.

The ALJ's decision shows that he considered all of the elements of Affective Disorder and, based upon evidence in the record, determined that Matta's condition did not meet the requirements for this impairment. The ALJ's discussion of Matta's RFC contains a detailed summary of Matta's illness including reports from Elmhurst Hospital. No medical records other than Riascos's assessment demonstrate that Matta was incapable of maintaining concentration and performing basic tasks. Such evidence supports a conclusion that Matta's condition did not satisfy the Affective Disorder criteria. It is evident from the

decision as a whole that the ALJ considered the full A.R. and based his determination that Matta's condition did not meet a listed impairment on that substantial evidence. *See Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When. . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). This Court finds no reason to disturb the ALJ's conclusion.

**C. Mental Demands of Work**

Finally, the burden shifted to the Commissioner to demonstrate whether Matta has the RFC to perform other work available in the national economy. The ALJ found that the Commissioner met that burden. Matta contends that even if his mental limitations "are not of listings severity, the limitations nonetheless prevent him from meeting the basic mental demands of work" and that the ALJ "failed to make a detailed assessment of [Matta's] ability to meet the specific basic mental demands of work." Pl's Mem. of Law at 22-23. Contrary to this argument, the ALJ properly based his decision on a thorough analysis of Matta's age, education, work experience and RFC. He considered substantial evidence in reaching his conclusion that Matta "has both the physical and the vocation capability to perform work," including medical records on Matta's reactions to stress and response to medication, his ability to focus and perform basic daily tasks and the testimony of a vocational expert. *See Dumas v. Schweiker*, 712 F.2d 1545, 1551, 1553 (2d Cir. 1983) (an ALJ determination was supported by substantial evidence where the decision contained "a complete and detailed recitation of the medical records and reports").

At the hearing, the ALJ questioned the vocational expert about the work prospects of a hypothetical individual with "moderate deficiencies in concentration, persistence and pace resulting in being limited to simple, routine, unskilled low stress tasks and moderate deficiencies in social functioning resulting in being limited to minimal contact with coworkers, supervisors and the general public." A.R. at 57. The ALJ also asked the expert about a hypothetical individual who, in addition to the RFC already described, was limited to "light exertion" because he could not stand more than an hour at a time. *Id.* The expert opined that such an individual could work at a variety of jobs, including jobs with "light physical demand" such as power screwdriver operator, electric steering machine operator and small products assembler. *Id.* at 58. After the vocational expert stated that a hypothetical individual could not perform any work if he needed to miss one day of work per week to attend therapy sessions, the ALJ reexamined Matta and asked if he could attend therapy at the end of the work day, so that he would not need to miss work. Matta confirmed that he could do so. A.R. at 60-61. It is standard practice for the Commissioner to use vocational expert testimony to satisfy his burden of showing that there exist jobs that the claimant is capable of performing, and the ALJ may rely on the testimony of such an expert, including responses to hypotheticals. *See Butts*, 388 F.3d at 384 (2d Cir. 2004); *Dumas*, 712 F.2d at 1554 (Where substantial evidence supported the RFC determination used in hypotheticals posed to a vocational expert, ALJ properly relied on that expert testimony).

The ALJ considered the impact of Matta's psychiatric problems on his ability to work, and tailored the decision regarding what jobs he could perform based upon the

7

limitations imposed by Matta's illness. *See* SSR 85-15 ("The reaction to the demands of work (stress) is highly individualized. . . impairment-related limitations created by an individual's response to demands of work. . . must be reflected in the RFC assessment."). The ALJ's finding that Matta is capable of working in low-stress environments is based on careful consideration of the full A.R.

III

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, the final decision to deny benefits under the Act is affirmed and Matta's complaint is dismissed.

**SO ORDERED.**

_____

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 18, 2011